1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FILED**

SEP 2 3 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

NOT FOR CITATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ERIC CRESENCIO DUARTE,           )     No. C 07-05678 JF (PR)
                                 )
             Petitioner,         )     **ORDER DENYING**
   vs.                           )     **PETITION FOR WRIT OF**
                                 )     **HABEAS CORPUS**
M.S. EVANS, Warden,              )
                                 )
             Respondent.         )
_____  )

**INTRODUCTION**

This is a federal habeas corpus action filed pursuant to 28 U.S.C. § 2254 by a *pro se* state prisoner.  For the reasons discussed below, the petition will be DENIED.

**BACKGROUND**

In 2004, a Santa Clara Superior Court jury convicted Petitioner of second degree robbery, false imprisonment, possession of a firearm by a felon, and possession of ammunition by a felon.  The jury found Petitioner not guilty of possession of methamphetamine.  Petitioner was sentenced to a term of 150 years-to-life in state prison, to be served consecutively to a term of seventy-three years and four months.

1    Evidence at trial showed that Petitioner, who was armed with gun, robbed a Wells

2 Fargo bank in San Jose, California of about $20,000, and carried the cash out of the bank

3 in a blue milk crate.  With the help of a tracking device in the cash bundles, police located

4 the money in the back of a house in San Jose owned by Sarah Garcia.  Garcia testified at

5 trial that she had heard someone in her backyard on the day of the robbery, and that she

6 saw Petitioner, whom she did not know, talking with her brother Juan, who had seen

7 Petitioner, who was out of breath and sweating, in Sarah's driveway.  Petitioner told Juan

8 that he was "hiding, and not to say anything."  Petitioner's friend, Ralph Baca, testified

9 that after the robbery he saw Petitioner put a gun into a computer tower belonging to

10 Baca's sister and that he had driven Petitioner to a field so that Petitioner could look for

11 money he left there.  (*Id.* at 4–7.)

12    As grounds for federal habeas relief, Petitioner claims that (1) the trial court

13 violated his right to due process by admitting his prior criminal acts as evidence; (2) the

14 trial violated his constitutional rights by denying his motions for substitution of counsel;

15 (3) his trial counsel rendered ineffective assistance; (4) the trial court denied his right to

16 self-representation; (5) the prosecutor failed to disclose relevant and material evidence to

17 the defense; and (6) the prosecutor committed misconduct.

### DISCUSSION

19 **A.    Standard of Review**

20    This Court will entertain a petition for writ of habeas corpus "in behalf of a person

21 in custody pursuant to the judgment of a State court only on the ground that he is in

22 custody in violation of the Constitution or laws or treaties of the United States."  28

23 U.S.C. § 2254(a).

24    The petition may not be granted with respect to any claim that was adjudicated on

25 the merits in state court unless the state court's adjudication of the claim: "(1) resulted in

26 a decision that was contrary to, or involved an unreasonable application of, clearly

27 established federal law, as determined by the Supreme Court of the United States; or

28

Order Denying Petition
G:\Pro-Se\SJ.JF\HC.07\Duarte678.hc.md

1    (2) resulted in a decision that was based on an unreasonable determination of the facts in

2    light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

3        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the

4    state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

5    question of law or if the state court decides a case differently than [the] Court has on a set

6    of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13

7    (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the

8    writ if the state court identifies the correct governing legal principle from [the] Court's

9    decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

10    at 413. "[A] federal habeas court may not issue the writ simply because that court

11    concludes in its independent judgment that the relevant state-court decision applied

12    clearly established federal law erroneously or incorrectly. Rather, that application must

13    also be unreasonable." *Id.* at 411.

14        "[A] federal habeas court making the 'unreasonable application' inquiry should

15    ask whether the state court's application of clearly established federal law was

16    'objectively unreasonable.'" *Id.* at 409. In examining whether the state court decision

17    was objectively unreasonable, the inquiry may require analysis of the state court's method

18    as well as its result. *Nunes v. Mueller*, 350 F.3d 1045, 1054 (9th Cir. 2003). The

19    standard for "objectively unreasonable" is not "clear error" because "[t]hese two

20    standards . . . are not the same. The gloss of error fails to give proper deference to state

21    courts by conflating error (even clear error) with unreasonableness." *Lockyer v. Andrade*,

22    538 U.S. 63, 75 (2003).

23        A federal habeas court may grant the writ if it concludes that the state court's

24    adjudication of the claim "results in a decision that was based on an unreasonable

25    determination of the facts in light of the evidence presented in the State court

26    proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination

27    of a factual issue made by a state court unless the petitioner rebuts the presumption of

28

1   correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

2   **B.   Petitioner's Claims**

3   **1.   Admission of Evidence of Prior Criminal Acts**

4   Petitioner claims that the trial court violated his right to due process when it

5   admitted evidence of his 1994 convictions for bank robberies and evidence that he had

6   used methamphetamine shortly before the Wells Fargo robbery.  (Pet. at 6–6(a).)  More

7   specifically, Petitioner contends that this was impermissible propensity evidence.  (*Id.*)

8   The trial court admitted evidence of the 1994 convictions with instructions to the

9   jury that such evidence could be considered only for purposes of determining identity,

10   motive, and knowledge of how to commit the crimes charged.  The drug use evidence was

11   admitted because it was relevant to the charge of possession of methamphetamine, and as

12   evidence of motive to commit the robbery, Petitioner having run out of methamphetamine

13   on the morning of the robbery.  The state appellate court rejected Petitioner's claims,

14   concluding that the 1994 robberies were sufficiently similar to justify their admission, and

15   that Petitioner's drug use was relevant to the charge of possession of methamphetamine

16   and as evidence of Petitioner's motive to commit the robbery.  (Ans., Ex. 10 at 20–21.)

17   The admission of evidence is not subject to federal habeas review unless a specific

18   constitutional guarantee is violated or the error is of such magnitude that the result is a

19   denial of the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan*,

20   197 F.3d 1021, 1031 (9th Cir. 1999).  In order to obtain habeas relief on the basis of an

21   evidentiary error, a petitioner must show that the error was of constitutional dimension

22   and that it was not harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

23   To show prejudice, a petitioner must show that the error had "'a substantial and injurious

24   effect' on the verdict." *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting

25   *Brecht*, 507 U.S. at 623).  Habeas relief may be granted only if there are no permissible

26   inferences that the jury may draw from the evidence.  *See Jammal v. Van de Kamp*, 926

27   F.2d 918, 920 (9th Cir. 1991).  Notably, the Supreme Court "has not yet made a clear

28

Order Denying Petition
G:\Pro-Se\SJ.JF\HC.07\Duarte678.hc.md

1 | ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due
2 | process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568
3 | F.3d 1091, 1101 (9th Cir. 2009).

4 |       Petitioner's propensity evidence claim lacks merit for several reasons. First, the
5 | trial court instructed the jury that the evidence was to be used only for a narrow purpose,
6 | and not to show propensity. Jurors are presumed to follow their instructions. *See*
7 | *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). Second, the jury was entitled to draw
8 | permissible inferences regarding motive, intent, and knowledge. Third, even if the jury
9 | improperly treated the evidence as indicative of propensity, no remediable constitutional
10 | violation occurred. The Supreme Court has yet to decide whether admission of
11 | propensity evidence violates due process. *Estelle v. McGuire*, 502 U.S. 62, 75 n. 5
12 | (1991). Because the Supreme Court has reserved this issue as an "open question," the
13 | Ninth Circuit has held that a Petitioner's due process right concerning the admission of
14 | propensity evidence is not "clearly established" for purposes of review under AEDPA.
15 | *Alberni v. McDaniel*, 458 F.3d 860, 866–67 (9th Cir. 2006).

16 |       **2.**    **Motions for Substitution of Counsel**

17 |       Petitioner claims that the trial court violated his Sixth Amendment rights when it
18 | denied his motions to change counsel following *Marsden* hearings[1] on July 21, 2004,
19 | September 20, September 28, and December 23. (Pet. at 6–6(e).)

20 |       Under Ninth Circuit authority, when a defendant voices a seemingly substantial
21 | complaint about counsel, the trial judge should make a thorough inquiry into the reasons
22 | for the defendant's dissatisfaction. However, the inquiry only need be as comprehensive
23 | as the circumstances reasonably permit. *King v. Rowland*, 977 F.2d 1354, 1357 (9th Cir.
24 | 1992). In determining whether the trial judge should have granted a motion for

25 | ———————————————

26 | Petitioner brought his motions under *People v. Marsden*, 2 Cal. 3d 118 (1970), a case
27 | that requires the trial court to permit a criminal defendant requesting substitution of
28 | counsel to specify the reasons for his request and generally to hold a hearing. *Bland v.*
*California Dep't of Corrections*, 20 F.3d 1469, 1475–76 (9th Cir. 1994).

Order Denying Petition
G:\Pro-Se\SJ.JF\HC.07\Duarte678.hc.md

1   substitution of counsel, the reviewing habeas court may consider the extent of the

2   conflict, whether the trial judge made an appropriate inquiry into the extent of the

3   conflict, and the timeliness of the motion to substitute counsel. *Daniels v. Woodford*, 428

4   F.3d 1181, 1197–98 (9th Cir. 2005).  The ultimate inquiry is whether the Petitioner's

5   Sixth Amendment right to counsel was violated.  *Schell v. Witek*, 218 F.3d 1017, 1024–25

6   (9th Cir. 2000).  In other words, the habeas court considers whether the trial court's denial

7   of or failure to rule on the motion " actually violated [the criminal defendant's]

8   constitutional rights in that the conflict between [the criminal defendant] and his attorney

9   had become so great that it resulted in a total lack of communication or other significant

10  impediment that resulted in turn in an attorney-client relationship that fell short of that

11  required by the Sixth Amendment." *Id.* at 1026.

12                      **A.    July 21, 2004 Hearing**

13       The *Marsden* hearing on July 21, 2004 hearing was based in part on defense

14  counsel's conduct at a suppression hearing, the specifics of which are discussed below.

15  Petitioner also raised issues concerning the role of his friend Ralph Baca and an

16  allegation that a police sergeant, Lawrence Ryan, eavesdropped on a conversation

17  between Petitioner and his counsel.  (Pet. at 6(b).)  The state appellate court rejected

18  Petitioner's claims, concluding that the trial court's rulings were fairly supported by the

19  record.  (Ans., Ex. 10 at 24.)

20       With respect to the suppression hearing, Petitioner has not shown that defense

21  counsel's representation at that hearing was constitutionally inadequate.  Two searches

22  were conducted.  The first was a parole search of Petitioner's mother's house.  After

23  being arrested as suspect in the 2003 Wells Fargo bank robbery, Petitioner identified his

24  mother's residence, where he often stayed and without being asked told the arresting

25  officer that the officer could conduct a search.  Methamphetamine was found in the

26  house, and a blue milk crate was found in the backyard.  The second search was

27  conducted at the house of Petitioner's girlfriend, Theresa Baca, after police were told that

28

Order Denying Petition
G:\Pro-Se\SJ.JF\HC.07\Duarte678.hc.md

1    Petitioner had stored a gun in the computer tower. A gun in fact was found in the

2    computer tower. The trial court denied Petitioner's motions to suppress the evidence

3    seized in the two searches. (Ans., Ex. 10 at 12–15.)

4         The state appellate court concluded that the trial court's rulings were not in error.

5    The first search was deemed valid because Petitioner had consented to the search and

6    because he was subject to a parole condition. The second search was deemed valid on

7    two alternative grounds: if the residence belong to Theresa's, Petitioner had no standing

8    to challenge the search; if the residence also belonged to Petitioner, the search was validly

9    conducted pursuant to Petitioner's parole condition. (*Id.* at 15–17.)

10        With respect to Baca, there was no enforceable agreement regarding Baca's

11   attendance at the preliminary examination, and Petitioner's allegations that the quality of

12   his trial counsel's cross-examination of Baca at trial suffered because he could not

13   question Baca at the preliminary examination are conclusory and lack evidentiary support.

14   Baca testified at trial that he helped to hide Petitioner's gun, but he also clearly stated that

15   he never actually touched the weapon. (Ans., Ex. 2, Vol. 3 at 89.) The testimony was

16   elicited on cross-examination, and was not exculpatory. Counsel's failure to impeach

17   Baca by questioning him about his criminal history was not deficient because evidence of

18   Baca's criminal history already had been presented by the prosecution. Finally, there is no

19   record evidence that Sergeant Ryan eavesdropped on an attorney-client conversation. The

20   trial court made adequate inquiries into the circumstances underlying the *Marsden*

21   motions, and its denial of the motions was supported. More specifically, the record shows

22   that the tactical disagreements which underlay the motion were insufficient to show that

23   there was a serious breakdown in the attorney-client relationship, let alone one degraded

24   enough that it violated Petitioner's Sixth Amendment rights.

**B.    September 20, 2004 Hearing**

26        The state appellate court summarized the facts relevant to this claim:

27        At this hearing [Petitioner] told the court that (1) counsel failed to provide
          him with various discovery items; (2) one previous *Marsden* motion as to

28

1   this counsel had been denied and another one was not presented when
    counsel said that things would get done; (3) the subpoenaed jail records
2   were not helpful because the investigator's entry and exit times are illegible,
    but counsel had not subpoenaed other jail records; (4) counsel's phone is
3   blocked so that he cannot communicate with counsel; and (5) he wanted to
    listen to the tapes of Ralph Baca's police interviews.  Defense counsel told
4   the court the tapes of Ralph Baca's interviews are on CDs, with drugs at that
    cannot be taken into the jail.  The court told [Petitioner] that a CD player
5   would be made available to him in the courtroom.  Counsel also told the
    court that he did subpoena the jail records [Petitioner] requested but the
6   information disclosed was unintelligible, and [Petitioner] has copies of all
    other requested discovery.  Counsel admitted that his phone has been
7   blocked, but it was not at his request, and that he has asked that it be
    changed.  However, counsel has met with [Petitioner] at least once a week
8   for between one and two hours each time.  The court found, based on
    counsel's responses, that there had not been a substantial impairment of the
9   attorney-client relationship, and therefore denied [Petitioner]'s motion.  As
    the record supports the trial court's findings, we cannot find that the court
10  abused its discretion in denying [Petitioner]'s September 20, 2004 *Marsden*
    motion.

11

12  (Ans., Ex. 10 at 23–24.)

13       The record supports the state appellate court's conclusion that the trial court did

14  not violate Petitioner's rights in denying Petitioner's motion to change counsel.  The

15  record shows that counsel provided Petitioner with what discovery material he properly

16  could give him, was not responsible for the fact that some of the materials were

17  unintelligible and was available to Petitioner for discussions regarding the case.  The trial

18  court made adequate inquiries into the relevant circumstances, and that its rulings were

19  fairly supported.

20       **C.    September 28, 2004 Hearing**

21       The relevant facts and the state appellate court's ruling are as follows:

22   At this hearing, [Petitioner] told the court that (1) counsel failed to object to
     Detective Boyd's inaccurate testimony regarding the description of the
23   robbers in his 1994 bank robberies and his involvement with drugs at that
     time, although counsel did have pictures from the robberies excluded at
24   [Petitioner]'s request;  (2) counsel failed to object to admission of the milk
     crate, which was not the crate used in the robbery; (3) counsel allowed
25   Sarah Garcia and [Petitioner]'s son to be released after their testimony over
     [Petitioner]'s objection, because [Petitioner] wanted to point out
26   inconsistencies with their prior statements; and (4) he wanted Juan Lopez to
     testify.  On appeal [Petitioner] contends that, if the seized milk crate was
27   not the one used in the robbery, it should have been suppressed, but he does
     not contend that it had been proven to not be the one used.

28

Counsel told the court that (1) he did not cross-examine Detective Boyd as [Petitioner] requested because it would open the door to gang evidence; (2) Lopez had been subpoenaed and would testify; (3) he did not want to recall [Petitioner]'s son because the boy appeared uncomfortable and would not be helpful unless he said something completely different than what he has said before; and (4) Sarah Garcia has identified [Petitioner] as the man she saw so counsel did not see any reason to bring her back.

The court told [Petitioner] that if he wanted the pictures from the 1994 bank robberies to come in to show any inaccuracies in Detective Boyd's testimony, the court would admit them. [Petitioner] did not request admission of the pictures. The court told [Petitioner] that counsel would have an opportunity during closing argument to make some of the arguments that [Petitioner] was raising, and that the arguments went to the weight to be given the evidence. The court found that counsel had been communicating with [Petitioner] during trial, and that it would allow such communication to continue. The court then denied [Petitioner]'s motion, finding that he failed to make an adequate showing of a substantial impairment of the attorney-client relationship or that counsel was committed to a position that would prevent an effective defense. Because substantial evidence supports the trial court's findings, we cannot say that the court abused its discretion in denying [Petitioner]'s September 28, 2004 *Marsden* motion.

(Ans., Ex. 10 at 24–25.)

The record again supports the state appellate court's conclusion that the trial court did not violate Petitioner's rights. Counsel did not examine Boyd because Petitioner had asked him not to. Counsel's decision not to recall Sarah Garcia or Petitioner's son was a reasonable tactical decision, and Lopez in fact testified. Nor has Petitioner shown that he was prejudiced by the introduction of the milk crate. There is no evidence that the milk crate offered at trial was not the one seized by police. Even if a different crate were offered, Petitioner has not shown that there was any difference between the two crates much less any differences that would have affected the outcome of the case. Moreover, other admissible evidence established that a blue milk crate was used in the Wells Fargo robbery, and that a blue milk crate was found in the backyard of a residence with which Petitioner was associated. The trial court made adequate inquiries into the circumstances of Petitioner's *Marsden* motion and its rulings were fairly supported by the record.

Order Denying Petition
G:\Pro-Se\SJ.JF\HC.07\Duarte678.hc.md

D.      December 23, 2004 Hearing

In his final *Marsden* motion, Petitioner renewed his claims that his trial counsel was deficient in failing to impeach Ralph Baca's testimony and investigate Sergeant Ryan's eavesdropping on an attorney-client conversation.  He also alleged that counsel was deficient in his investigation and presentation of the motion to suppress, in failing to investigate and present the motion to suppress, in failing to investigate and oppose the prosecutor's motion to admit evidence of prior criminal acts, and to investigate his claim that the milk crate shown to the jury was not the one Petitioner allegedly used in the crimes.  (Pet. at 6(e).)

The record supports the state appellate court's conclusion that the trial court did not violate Petitioner's rights when it denied this motion to change counsel.  Each of Petitioner's assertions had been rejected by the trial court, and the foregoing discussion indicates properly so.

3.      **Ineffective Assistance of Counsel**

Petitioner recasts the arguments made in his four *Marsden* motions as a separate claim of ineffective assistance of counsel.  The state appellate court rejected these claims: "As we have determined that the record supports the trial court's determination at each *Marsden* hearing that [Petitioner] had not presented a colorable claim that he was ineffectively represented at trial, we need not further discuss this claim."  (Ans., Ex. 10 at 28.)

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of counsel, the Petitioner must establish two factors.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687–68, "not whether it deviated from best practices or most common custom," *Richter*, 131 U.S. at 788 (citing *Strickland*, 466 U.S. at 650).  "A court considering a claim of ineffective assistance must

1  apply a "strong presumption" that counsel's representation was within the "wide range"

2  of reasonable professional assistance." *Id.* at 787 (quoting *Strickland*, 466 U.S. at 689).

3  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e.,

4  that "there is a reasonable probability that, but for counsel's unprofessional errors, the

5  result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A

6  reasonable probability is a probability sufficient to undermine confidence in the outcome.

7  *Id.*

8       A reviewing federal habeas court must accord tactical decisions by trial counsel

9  considerable deference. "[C]ourts may not indulge '*post hoc* rationalizations' for

10 counsel's decision-making that contradicts the available evidence of counsel's actions . . .

11 neither may they insist counsel confirm every aspect of the strategic basis for his or her

12 actions. There is a 'strong presumption' that counsel's attention to certain issues to the

13 exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Richter*, 131 S.Ct. at

14 790 (citations omitted). Tactical decisions of trial counsel deserve deference when:

15 (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an

16 informed decision based upon investigation; and (3) the decision appears reasonable

17 under the circumstances. *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

18      Petitioner has not shown that counsel's performance was deficient in any instance,

19 or that he suffered prejudice because of those alleged deficiencies. With respect to the

20 deficient performance prong, the record shows that counsel's tactical decisions were

21 reasonable under the circumstances and Petitioner's conclusory allegations that counsel

22 performed inadequately lack support in the record. Because Petitioner has failed to show

23 that his counsel's performance was deficient, it is unnecessary to consider the prejudice

24 prong. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

25      **4.  *Faretta* Motion**

26      Petitioner claims that the trial court denied his Sixth Amendment rights when it

27 denied his motions to represent himself. (Pet. at 6(f)–(h).) The state appellate court

28

Order Denying Petition
G:\Pro-Se\SJ.JF\HC.07\Duarte678.hc.md

1  rejected this claim. Petitioner made his first motion after the jury was sworn and two

2  witnesses had testified. The second motion was made eight days later. (Ans., Ex. 10 at

3  28–29.)  The trial court denied that motion as untimely, a ruling the state appellate court

4  upheld. (Ans., Ex. 10 at 32.)

5      A criminal defendant has a Sixth Amendment right to self-representation. *Faretta*

6  *v. California*, 422 U.S. 806, 832 (1975). However, a defendant's request to represent

7  himself must be made in timely fashion; "a timeliness element in a *Faretta* request is

8  clearly established federal law as determined by the Supreme Court." *Marshall v. Taylor*,

9  395 F.3d 1058, 1061 (9th Cir. 2005) (internal quotation and citation omitted). "[B]ecause

10  the Supreme Court has not clearly established when a *Faretta* request is untimely," "other

11  courts are free to do so as long as their standards comport with the Supreme Court's

12  holding that a request 'weeks before trial' is timely." *Id.* The California Supreme Court

13  has held that a *Faretta* motion must be made "within a reasonable amount of time prior to

14  the commencement of trial." *See People v. Windham*, 19 Cal. 3d 121, 127-28 (1977). In

15  *Marshall*, the defendant made his *Faretta* motion on the morning of trial. 395 F. 3d at

16  1061. The Ninth Circuit found no constitutional error in the state court's denial of the

17  motion. *See id.* ("Because the timing of [Petitioner's] request fell well inside the 'weeks

18  before trial' standard for timeliness established by *Faretta*, the [California] court of

19  appeal's finding of untimeliness clearly comports with Supreme Court precedent."). The

20  Ninth Circuit also observed that the petitioner had "presented no facts to show that his

21  last-minute request was reasonable," and that "he could have made his request much

22  earlier than the day of trial." *Id.* at 1061.

23      Petitioner made his *Faretta* motions in this case after the jury had been

24  impannelled and two witnesses had testified. This obviously does not comport with the

25  "weeks before trial" framework required by the Supreme Court.

26

27

28

Order Denying Petition
G:\Pro-Se\SJ.JF\HC.07\Duarte678.hc.md

### 5.   *Brady* Claim

Petitioner next claims that the prosecutor violated his right to due process and confrontation by failing to preserve the audiotape of his police interrogation. (Pet. at 6(h).) According to Petitioner, the audiotape would show that his statements to police were involuntary, resulting from Petitioner's methamphetamine intoxication, were taken in violation of the Fifth Amendment, and lacked probative value. (*Id.*)

Petitioner moved to exclude all testimony regarding his statements to Sergeant Ryan. The trial court ruled that:

> Sergeant Ryan could testify that [Petitioner] admitted bingeing [*sic*] with Theresa on methamphetamine until they ran out of drugs at 2:00 a.m., that [Petitioner] could not confirm or deny that he had been in the field on March 28, 2003, and that [Petitioner] said that he might have been "kicking it" against the car in the driveway at 2730 Chopin Street.  The court excluded other statements by [Petitioner] as more prejudicial than probative.  The court also ruled that the portion of the interview that it was admitting was 'not reliant on the tape so much as . . . on this officer's recollection and his ability to testify to this conversation so on that basis I will deny the request.'

(Ans., Ex. 10 at 33–34.) Ryan testified as follows at trial:

> Q.  Did he display any symptoms or indications that he was under the influence of any stimulant?
>
> A.  I don't specifically recall what objective symptoms he displayed although we talked about his drug use, his being under the influence and basically bingeing [*sic*] for the last couple of days.
>
> Q.  Did you believe he was under the influence at that time?
>
> A.  It was obvious that he was but I didn't maintain mental notes or references to the exact symptoms such as dilated eyes or stuff like that.
>
> Q.  Do you remember anything at all in regards to him being under the influence?
> A.  He wasn't overly hyperactive.  He was just the opposite, consistent with coming down from drugs.  He was a little tired.
>
> Q.  Okay. When you talked to him and interviewed him were his answers coherent?
>
> A.  Yes.
>
> Q.  Intelligible?

A. Yes.

Q. Where [*sic*] they responsive to your questions?

A. Yes.

Q. Was there anything specific that you can point to that [] would indicate that he knew exactly what he was saying, that he was in possession of all of faculties at least mentally as far as understanding what was going on?

A. He was able to talk to me about the past bank robberies which we've talked about and then as I persisted on my questioning [about the Wells Fargo robbery,] he was able to decide that he didn't want to talk me further and told me that.

(Ans., Ex. 2, Vol. 7 at 411–412.)

The state appellate court rejected Petitioner's claim:

We find that [Petitioner] has not shown that the prosecution's failure to preserve the tape of [Petitioner]'s interview by Sergeant Ryan deprived him of due process. The court found that only portions of the interview were relevant, and it excluded other portions as more prejudicial than probative. The tape was not exculpatory, as there was no claim below that [Petitioner] denied during the interview that he had committed the bank robbery, or that he offered an alibi for the time it occurred. Sergeant Ryan's testimony at the Evidence Code section 402 hearing indicated that [Petitioner]'s statement was not involuntary and that no *Miranda* violation occurred, and [Petitioner] did not present any contrary evidence. [Petitioner] was able to cross-examine Sergeant Ryan about [Petitioner]'s demeanor and responsiveness during the interview, so the tape would have been cumulative as to any impeachment testimony. And, Sergeant Ryan testified before the jury during cross-examination that he had taped [Petitioner]'s interview but that the tape had somehow disappeared. Thus, we find that there is not a reasonable probability that, had the tape been preserved and disclosed to [Petitioner], a result more favorable to him would have occurred.

(Ans., Ex. 10 at 35.)

The government has an obligation to surrender favorable evidence that is "material either to guilt or to punishment," even if the defendant does not request disclosure of such evidence. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *U.S v. Agars*, 427 U.S. 97, 107 (1976). To establish a *Brady* violation, the defendant must show that the favorable evidence was suppressed by the state, either willfully or inadvertently, resulting in prejudice. *Morris v. Aalst*, 447 F.3d 735, 741 (9th Cir. 2006).

1    Petitioner has not shown that a *Brady* violation occurred.  Indeed, the jury heard

2    the very evidence he wanted it to hear.  Ryan testified that he thought Petitioner was

3    under the influence of methamphetamine.  Defense counsel was free to question Ryan

4    further about his opinion and observations.  Petitioner has not shown that the outcome of

5    the proceeding would have been different had the prosecution preserved and disclosed the

6    audiorecording.

7        **6.    Prosecutorial Misconduct**

8        Petitioner claims that the prosecutor violated his right to due process by telling the

9    jury that Ralph Baca was not an accessory to the Wells Fargo robbery.  (Pet. at 6(i).)

10   Petitioner's claim is based on the following interchange between the prosecutor and Baca:

11       [THE PROSECUTOR]:  Okay. Do you understand after talking to your
         lawyer that I don't believe that you committed the crime of accessory —
12
         THE COURT:  That's an improper question. What you believe has got nothing to
13       do with this trial.

14       [THE PROSECUTOR]:  Is it your understanding that my office is not going to
         charge you with accessory after the robbery?
15
         [BACA]: Yes.
16

17   (Ans., Ex. 10 at 36.)  The state appellate court rejected Petitioner's prosecutorial

18   misconduct claim:

19       [W]e find any misconduct harmless.  [Citation removed.]  The court told the
         prosecutor in front of the jury that his question was improper and that the
20       prosecutor's personal belief had no relevance to the case.  The prosecutor
         then promptly reworded the question to say that his office would not be
21       prosecuting Ralph.  The court had previously ruled that such a question was
         appropriate.  [Petitioner] did not request a mistrial or even a further
22       admonition from the trial court, so we may presume that he felt at the time
         that the court's admonition cured any harm caused by the improperly
23       worded question.  We cannot find that, absent this admittedly brief
         exchange, it is reasonably probable that a more favorable result would have
24       occurred.

25   (*Id.* at 36–37.)

26       A defendant's due process rights are violated when a prosecutor's misconduct

27   renders a trial "fundamentally unfair."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

28

Order Denying Petition
G:\Pro-Se\SJ.JF\HC.07\Duarte678.hc.md

1   Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so,

2   the next question is whether such conduct infected the trial with unfairness so that there

3   was a due process violation. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).  In

4   order for a petitioner to prevail on federal habeas review, the prosecutor's misconduct

5   must have resulted in prejudice, that is, the misconduct must have had a substantial and

6   injurious effect or influence in determining the jury's verdict.  *Johnson v. Sublett*, 63 F.3d

7   926, 929 (9th Cir. 1995) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

8        Even assuming that the prosecutor's question in this case was improper, Petitioner

9   has not shown that he suffered prejudice.  The trial court swiftly corrected the prosecutor,

10   who then immediately posed a reformulated and undisputedly proper question.  This

11   Court must presume that the jury followed the implicit instruction by the trial court to

12   reject the first question as improper and to accept the second as proper. *See Marsh*, 481

13   U.S. at 206.  Even if the jury did somehow conclude that Baca was not an accessory,

14   Petitioner has not shown that the diminution of Baca's role was harmful to Petitioner.

**CONCLUSION**

16        Because Petitioner has failed to show that there was "no reasonable basis for the

17   state court to deny relief," *Richter*, 131 S. Ct. at 784, that is, that the state court's decision

18   as to the above claims was contrary to, or involved an unreasonable application of, clearly

19   established Supreme Court precedent, the petition will be denied.[2]

---

22     Appended to the petition is a declaration from Petitioner's fellow inmate, Richard
23   Sanchez.  Sanchez asserts that he heard Ralph Baca say in 2003 that he was going to "to get
     even with" Petitioner for having sex with Baca's wife by "setting him up."  According to
24   Sanchez, Baca offered a quarter ounce of methamphetamine to anyone Sanchez knew who
25   could attack Petitioner.  (Pet., Ex. A.)  Petitioner asserts that the declaration is further
     evidence that Baca testified falsely.  (Pet. at 6(i)–(j); Ex. B.)  Even if it is taken at face value,
26   this declaration does not affect the disposition of the present petition.  As Petitioner admits,
     evidence of Baca's jealously and motive to lie was presented to the jury.  (Ans., Ex. 2, Vol.
27   3 at 99–104.)

Order Denying Petition
G:\Pro-Se\SJ.JF\HC.07\Duarte678.hc.md

1    A certificate of appealability will not issue. Reasonable jurists would not "find the

2 district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

3 *McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability

4 from the Court of Appeals.

5    The Clerk shall enter judgment in favor of Respondent and close the file.

6 **IT IS SO ORDERED.**

7 DATED: 9-21-11

JEREMY FOGEL

8 United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.JF\HC.06\McGruder525.hcruling.md

17

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ERIC C. DUARTE,

           Petitioner,

  v.

M. S. EVANS, Warden,

           Respondent.

                                  /

Case Number: CV07-05678 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on _____9/23/11_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Eric Cresencio Duarte T-24814
Salinas Valley State Prison
Facility A4/235/L
PO Box 1050
Soledad, CA 93960

Dated: _____9/23/11_____

                              Richard W. Wieking, Clerk

                              E. Barvia, Deputy Clerk